IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY D. METOYER,

Petitioner, No. CIV S-02-2731 GEB DAD P

vs.

TOM CAREY, et al.,

Respondents. FINDINGS AND RECOMMENDATIONS

_________________________________/

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus. Petitioner is in custody pursuant to a 1988 judgment of conviction entered in the Los Angeles County Superior Court on a charge of second degree murder. In the petition for writ of habeas corpus filed in this action on December 24, 2002, petitioner challenges a decision by the California Board of Prison Terms (Board) rendered on June 14, 2000, finding him not suitable for parole.[1] For the reasons set forth below, the undersigned recommends that petitioner's application for a writ of habeas corpus be denied.

/////

[1] Effective July 1, 2005, California's Board of Prison Terms was abolished and replaced with the Board of Parole Hearings. Cal. Penal Code § 5075(a) (West 2006) ("As of July 1, 2005, any reference to the Board of Prison Terms . . . refers to the Board of Parole Hearings.").

BACKGROUND

In 1988, petitioner was convicted of second degree murder and received an indeterminate sentence of twenty-one years to life in state prison. (Answer, Ex. A.) The facts of petitioner's crime are as follows:

> at approximately 12:30 a.m. on April 17, 1987, [petitioner] went to an apartment on Baker Street in Los Angeles with his crime partner, broke a window with a tire arm [sic], and his crime partner fired shots through the window with a shotgun. Both [petitioner] and his crime partner then fled in their car with two other men. Robert Herrera, an occupant of the apartment, was fatally wounded by the gunshots. The crime partner was arrested shortly after the offense after a high speed car chase. [Petitioner] escaped and surrendered to police the next day.

(Answer, Ex. C at 5.)

On June 14, 2000, petitioner appeared before the Board for his initial parole consideration hearing. (Answer, Ex. C at 1.) The Board found petitioner unsuitable for parole and deferred further parole consideration for three years. (Id. at 39.) Petitioner subsequently challenged the Board's decision in an administrative appeal filed on August 31, 2000. (Answer, Ex. H, document entitled "Appeal.") The appeal was denied on January 9, 2001. (Id., document entitled "Decision on Appeal.") On August 27, 2001, petitioner challenged the Board's decision in a petition for a writ of habeas corpus filed in the Solano County Superior Court. (Answer, Ex. I at 1.) That petition was denied on August 27, 2001. (Id. at 2.) Petitioner subsequently filed a petition for a writ of habeas corpus in the California Supreme Court. (Answer, Ex. K.) That petition was summarily denied by order dated October 2, 2002. (Id.)

Petitioner filed the instant petition for a writ of habeas corpus on February 28, 2003. Petitioner makes several arguments in support of a claim that his federal due process rights were violated by the failure of the Board to find him suitable for parole. First, he claims that the Board improperly found that he would pose a danger to the public if he were to be released. (Pet. at 5.) Second, petitioner claims that he was found unsuitable for parole based on an unlawful gubernatorial policy against parole ("no parole policy") for inmates convicted of

murder. (Id.) Third, he claims that he was found unsuitable for parole based on illegal "underground regulations" that have not been properly enacted by the California legislature. (Id.)

On June 23, 2003, respondents filed an answer. They contend that petitioner does not have a liberty interest in parole and that, in any event, petitioner received all the process that was due at the June 14, 2000, suitability hearing. Respondents also argue that petitioner has failed to demonstrate that the Board has an illegal "no parole policy" or that it relied on improper "underground regulations" in failing to find petitioner suitable for parole.

ANALYSIS

I. Standards of Review Applicable to § 2254 Actions

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

## II. Petitioner's Claims

### A. Whether "Some Evidence" Supports the Board's Decision

Petitioner's first claim is that the Board abused its discretion when it concluded that petitioner was a danger to society and should not be released. Petitioner argues that, contrary to the Board's findings, and based on the parole suitability criteria set forth in the California Code of Regulations, he has satisfied all of the criteria for parole release. In support of this argument, petitioner points to the following factors: (1) a December 27, 1999 psychiatric evaluation concluded that petitioner "has outgrown his addictiveness and impulsivity and if released he would be an odds-on bet to function responsible [sic] in the community;" (2) petitioner has no juvenile record because his "juvenile record has been destroyed/sealed and doesn't exist;" (3) petitioner has a stable social history; (4) petitioner has shown signs of remorse; (5) the crime was committed while petitioner was intoxicated and was in retaliation for

violent acts committed by the victim against petitioner's brother; (6) the actual shooting was committed by petitioner's crime partner; (7) because petitioner is now 46 years old, there is "a reduced probability of recidivism;" (8) petitioner has letters of support, a residence with his mother and sister, and help to obtain employment; and (9) petitioner has been a model prisoner and has participated in self-help, educational, and vocational training programs. Petitioner claims that the Board arbitrarily found him unsuitable for parole without fully considering all of this available information and evidence (Pet. at 6-15.)

1. State Court Decision

The Solano County Superior Court denied petitioner's claim challenging the Board's denial of parole, reasoning as follows:

> Although petitioner challenges the Board of Prison Terms Panel's finding of "unsuitable" for parole, a review of the file shows that the Panel's findings are supported by some evidence. That is all the law requires. In light of petitioner's past violent record, the circumstances surrounding the commitment offense and the petitioner's failure on a prior parole, the Panel's finding of present unsuitability for parole is supported by adequate evidence.
>
> Therefore, petitioner's application is denied.

(Answer, Ex. I.)

2. Applicable Law

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (quoting Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)). California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners

who have not already been granted a parole date. Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion, 306 F.3d at 903. Accordingly, this court must examine whether the deprivation of petitioner's liberty interest in this case lacked adequate procedural protections and therefore violated due process.

Because "parole-related decisions are not part of the criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated." Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation omitted). Where, as here, parole statutes give rise to a protected liberty interest, due process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial. Id. at 1390 (quoting Greenholtz, 442 U.S. at 16). See also Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving parole issues). Violation of state mandated procedures will constitute a due process violation only if the violation causes a fundamentally unfair result. Estelle, 502 U.S. at 65.

In California, the setting of a parole date for a state prisoner is conditioned on a finding of suitability. Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402. The requirements of due process in the parole suitability setting are satisfied "if some evidence supports the decision." McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S. 445, 456 (1985)); Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992)). For purposes of the AEDPA, Hill's "some evidence" standard is "clearly established" federal law. See Sass, 461 F.3d at 1129 (citing Hill, 472 U.S. at 456 (1985)). "The 'some evidence' standard is minimally stringent," and a parole decision will be upheld if there is any evidence in the record that could support the conclusion reached by the factfinder. Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence

underlying the board's decision must have some indicia of reliability." Jancsek, 833 F.2d at 1390. See also Perveler, 974 F.2d at 1134. Determining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Toussaint, 801 F.2d at 1105. The question is whether there is any reliable evidence in the record that could support the conclusion reached. Id.

In Biggs, the Ninth Circuit Court of Appeals indicated that a continued reliance on an unchanging factor such as the circumstances of the offense could result in a due process violation. While in that case the court rejected several of the reasons cited by the Board for finding the petitioner in that case unsuitable for parole, it upheld three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner could benefit from therapy. 334 F.3d at 913. However, the court cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to that offense in denying parole could violate due process. In this regard, the court observed:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest in parole.

Id. at 916. The court also stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Id. at 917.

In Sass, the Ninth Circuit addressed a case in which the Board had found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his

convicted offenses in combination with his prior offenses. 461 F.3d at 1126. Citing Biggs, the petitioner contended that reliance on these unchanging factors violated due process. The Ninth Circuit disagreed, concluding that in the case before it these factors amounted to "some evidence" to support the Board's determination. Id. at 1129. The court provided the following explanation:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 917 (emphasis added). **Under AEDPA it is not our function to speculate about how future parole hearings could proceed. Cf. id.** The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

Id. (emphasis added).

3. Analysis

In this case, as in Biggs and Sass, the Board's decision that petitioner was unsuitable for parole was supported by "some evidence" that bore "indicia of reliability." At the conclusion of the September 20, 2002 hearing, the Board found petitioner unsuitable for parole because he "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Answer, Ex. C at 35.) The Board relied on the following factors in reaching this decision:

> PRESIDING COMMISSIONER ANGELE: We're on the record. The Panel has reviewed all information received from the public and relied on the following circumstances in concluding the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. The offense was carried out in a callous manner. There were multiple victims injured or killed in the same incident. The offense was carried out in a calculated manner. The offense was carried out in a manner which demonstrates an exceptionally

callous disregard for human life. The motive for the crime was inexplicable or very trivial in relation to the offense. These conclusions were drawn from the Statement of Facts wherein the prisoner along with a crime partner on April 17, 1987, went to an apartment in Long Beach where the inmate broke a window out with an object and his crime partner fired shotgun blasts through the window killing one individual and wounding another. The inmate and his crime partner fled from police in a high speed chase, and he was - - He escaped at the time, but later turned himself into the police the next day. The prisoner has a previous - - and on a previous occasion was involved in a homicide, and has a record of violent behavior. He failed to profit from society's previous attempts to correct his criminality such as parole and a prior prison term, and has a prior criminality which includes a State Prison commitment for murder, second degree. The Panel notes that responses to 3042 notice indicate opposition to a finding of parole suitability, specifically the District Attorney's Office of the County of Los Angeles. In view of the prisoner's assaultive behavior history, there is no indication that the prisoner would behave differently if paroled. Nevertheless, the prisoner should be commended for receiving 30 (inaudible) chronos, (inaudible) got his high school diploma, for remaining disciplinary free, completing vocational lens lab, carpentry and CMC router. And let me say this, if the only thing that we considered was your programming, you've got the door. Okay? You've done a great job inside.

INMATE METOYER: Thank you.

PRESIDING COMMISSIONER ANGELE: But my statement to you is based upon the crime itself and your prior criminal history. You've been programming greatly while you were inside, but you don't program very well outside. And you've already been involved in taking two lives. And whatever your participation on, (inaudible). These positive factors of your behavior do not outweigh the factors of unsuitability. Denial will be for a period of three years. And that the prisoner - - In a separate decision, the Hearing Panel finds that the prisoner has been convicted of murder. It is not reasonable to expect that parole would be granted at a hearing during the next three years. The prisoner committed the offense in an exceptionally cruel manner. Specifically, he and a crime partner went to an apartment in Long Beach where the inmate broke out a window and his crime partner put a shotgun through the window, pulled the trigger, causing the death of one individual and the wounding of another. After the event, they were chased by the police at high speed. The crime partner was captured, and the inmate escaped and (inaudible) the next day. The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human life. The motive for the crime was inexplicable or very trivial in relation to the offense. The prisoner has a prior record of violent behavior in that the

> prisoner was involved in a homicide of one individual, and received a State Prison sentence for second degree murder. The Panel recommends that the prisoner remain disciplinary free and that you continue upgrading. You've done a great job in custody. I'll tell you that. And I - - All I can tell you is that, still, we're talking about two people that died as a result of your participation.

(Id. at 35-38.)

Of great significance here is the fact that contrary to the scenario described in Biggs, this is not a case where petitioner's due process rights are implicated by repeated parole denials based upon continued reliance solely on the unchanging factors of the commitment offense and conduct prior to imprisonment. On the contrary, this was petitioner's first parole consideration hearing. Under the circumstances presented here, this court cannot say that the record of petitioner's September 20, 2002, suitability hearing is "so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." Hill, 472 U.S. at 457.[2] The decision of the California Superior Court to the same effect is not contrary to or an unreasonable application of the federal due process principles set forth above. Accordingly, petitioner is not entitled to relief on this claim.

B. No-Parole policy

Petitioner claims that a blanket gubernatorial policy against parole for inmates convicted of murder ("no parole policy") prevented him from obtaining a fair parole hearing. (Pet. at 21-23.) In support of this argument, petitioner has filed: (1) several news articles reporting on the rescission by former Governors Wilson and Davis of parole dates **granted** by the Board to prisoners convicted of murder (Pet., Ex. D.); (2) a news article reporting on former Governor Davis's views on the loyalty owed by judges to the Governor's positions on the law

---

[2] Of course, if over time petitioner continues to demonstrate exemplary behavior and "a great job" of programming inside prison, denying him a parole date simply because of unchanging factors such as the nature of his offense and pre-offense record, would raise more serious questions involving his liberty interest in parole. See Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir. 2003).

(id.); (3) an "independent study" conducted by a "concerned citizen" entitled "Evidence Concerning Illegal Actions of the California Board of Prison Terms" (id., Ex. F); and (4) a letter written by Albert Leddy, a former Board member, discussing his belief that former Governor Wilson had a "no parole policy" for inmates convicted of murder. (id., Ex. E.)

The documents described above do not constitute sufficient proof that the Board found petitioner unsuitable for parole based on an illegal "no parole" policy. This case does not involve a gubernatorial rescission of a parole date granted by the Board or any action by a judge. Accordingly, the newspaper articles submitted by petitioner are largely irrelevant to his claim. The opinion of Mr. Leddy, who retired from the Board in 1992, and the views of an unidentified "concerned citizen" establish only the opinion of those two persons and do not constitute competent proof that the Board had a blanket policy in 2000 of denying parole to convicted murderers.

Petitioner requests that the court take judicial notice of "this Court's records, transcripts, and exhibits established in the case of Melvyn H. Coleman v. Board of Prison Terms, CIV S-96-0783 LKK PAN P (E.D. Cal. 2005), as the issues of fact adjudicated and resolved in Coleman, are identical to those issues of fact involved in Petitioner's case." (July 15, 2005, "Request for Court to Take Judicial Notice of Court Records and Related Issues" at 1.) In Coleman, the petitioner presented extensive evidence that in the early 1990s, under former Governors Wilson and Davis, the Board operated under a blanket policy to deny parole for almost all prisoners convicted of murder. The petition for writ of habeas corpus was granted in Coleman on the ground that this "no parole" policy prevented the petitioner from obtaining a fair parole suitability determination in 1997. Subsequently, the petitioner in that case received a new suitability hearing and received a five year denial of parole.

Respondents argue that this court may not take judicial notice of "findings" that the court made in Coleman because those findings are not a proper subject for judicial notice. Respondents also argue that "to the extent that Metoyer's request is an attempt to collaterally

estop Respondents from litigating the issue of bias, the Court should deny the request because non-mutual collateral estoppel may not be used against the government." (Opp'n to Request for Judicial Notice at 1.) Petitioner denies that he is asking this court to take judicial notice of the findings contained in Coleman. (Pet'r's Reply to Resp't's Opp'n re: Request for Judicial Notice at 1.) Rather, petitioner is apparently requesting that this court take judicial notice of the evidence compiled by the petitioner in Coleman and use it to conduct an analysis of whether petitioner was improperly denied parole in 2000 based on a "no parole" policy for inmates convicted of murder.

To the extent that petitioner is asking the court to take judicial notice of any factual findings in Coleman and apply them to this case, that request should be denied. A court "may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (quoting Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388-89 (2d Cir. 1992). See also San Luis v. Badgley, 136 F.Supp.2d 1136, 1146 (E.D. Cal. 2000). Accordingly, this court may not find that the Board operates under a "no parole" policy based solely on findings made in Coleman.

Petitioner's request, if any, that this court apply the doctrine of non-mutual offensive collateral estoppel to establish that the Board was biased against petitioner, based on the "no parole policy" found in Coleman, should also be denied. Non-mutual collateral estoppel is not available against the government to preclude relitigation of issues. United States v. Mendoza, 464 U.S. 154, 159-60 (1984). See also Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 713-14 (9th Cir. 2005) (precluding the use of non-mutual collateral estoppel against a state or state agency). This is especially true here, where Coleman was decided under pre-AEDPA law, whereas the instant case is governed by AEDPA. See Steen v. John Hancock Mut. Life Ins. Co., 106 F.3d 904, 914 (9th Cir. 1997) (collateral estoppel does not apply where there is a "significant change in the legal climate").

In any event, the records in Coleman, which provided evidence of parole consideration policies in California during the early 1990s, are not relevant to petitioner's hearing, which took place in 2000. See Coleman order dated February 3, 2006 (concluding that the petitioner's evidence of a "no parole policy" in the 1990s was irrelevant to petitioner's claim that he was denied parole in 2005). Petitioner has provided no competent evidence that a "no parole" policy for inmates convicted of murder was in place in 2000, when he received his first parole consideration hearing. Petitioner has also failed to provide evidence that such a "no parole" policy on the part of the former governor(s) played any part in the Board's decision to find petitioner unsuitable for parole. As discussed above, there was "some evidence" in the record to support the Board's decision. See In re Rosenkrantz, 29 Cal. 4th 616, 684-86 (2002) (California Supreme Court rejecting petitioner's claim that the decision of a former Governor to reverse a parole suitability decision of the Board resulted from a blanket policy of denying parole in all murder cases because there was "some evidence" to support the Governor's decision).

Petitioner has failed to establish that he was improperly denied parole based on a blanket policy of denying parole to all inmates convicted of murder. Accordingly, relief as to this claim should be denied.

C. State Law Sentencing Claims

Finally, petitioner claims that the Board used improper and unauthorized "underground regulations" to find him unsuitable for parole. (Pet. at 5.) Specifically, petitioner contends that under the Determinate Sentencing Law implemented in 1977, he is entitled to a "declaration of rights and duties," because no release date has been set, petitioner has reached the minimum statutory requirement of ten calendar years, and his sentence exceeds the Matrix. (Id. at 19.) He argues that the BPT is required to adhere to a certain formula (the "Matrix System") in setting his release date.

Petitioner's arguments in this regard were recently rejected by the California Supreme Court in In re Dannenberg, 34 Cal. 4th 1061 (2005) (holding that the Board is not

required to refer to its sentencing matrices or to compare other crimes of the same type in deciding whether a prisoner is suitable for parole). More importantly for purposes of this federal habeas corpus action, petitioner has not cited any federal law for the proposition that the Due Process Clause requires a state parole board to either set a parole date as a matter of course where the board members believe a prisoner poses an unreasonable risk of danger to society, engage in a comparative analysis before denying parole suitability, or to set a parole date within a state's "matrix." Any argument that the state court has merely erred in applying state sentencing laws to petitioner's release date is not cognizable in this federal habeas corpus proceeding. Estelle, 502 U.S. at 67-68. As discussed above, federal due process requires only that the Board's decision be based on "some evidence" bearing an "indicia of reliability." This is true even though there may be other factors favoring petitioner's release on parole. The Board's decision, reached at the parole suitability hearing in June of 2000, that petitioner was unsuitable for parole, meets that minimally stringent test. Accordingly, petitioner is not entitled to relief on his due process claim.

CONCLUSION

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

/////

/////

/////

/////

that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 26, 2007.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

8:metoyer2731.hc